Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The 6th Division, the Honorable Justice Sharon O. Johnson presiding. Case number 23-0089, consolidated with 23-0141, James McDonald v. Sally Wagenmaker. Good afternoon. Can I have everyone that is not presenting today to turn the cameras off and mute themselves, please? Thank you. I'm Justice Sharon O. Johnson and I am joined by my colleagues, Justice Michael B. Hyman and Justice Sanjay C. Taylor. Each side will be given a total of 20 minutes in which to present their arguments and answer questions of the panel. May I have the appellants state their appearance for the record? Yes, good afternoon, Your Honor. Jeremy Boter on behalf of the appellants Sally Wagenmaker and Wagenmaker and Oberle. Okay, you'll have a total of 20 minutes. Would you like to reserve any of that time for rebuttal? Yes, Your Honor. Okay, how much? Four minutes for rebuttal, Your Honor. I'm sorry, five minutes, Your Honor. Excuse me. Okay. All right, so you'll have 15 and five. We are somewhat lenient. If you are answering a question of a justice that goes over, we'll allow you to complete your answer. Okay, and for the appellees, I understand that because this is, oh, yes. There's two appellants. Okay, yes, thank you. Okay, who else is representing the appellants? That's me, Your Honor, Kevin Todd, on behalf of non-party appellant Hockendorn and Talbot. Okay. And Mr. Boter and I previously discussed allocation of time between the two of us. Thank you. So, of his 20 minutes, he'll take 15 and I'll take five. And then of the rebuttal portion of the five, he'll take four and I'll take one. Well, you have a total of 20 minutes between you. Correct. Okay. We were told something different by Mr. Schaefer, but I think we can make this work, Your Honor. Okay. All right. So, why don't we do seven and a half each and then on the rebuttal, you can take two and a half. How about that? I think, Your Honor, Mr. Todd, I think we'll agree. If I take 10, Mr. Todd can take five. I will then take three and you can take two in rebuttal. Okay. That's fine, Your Honor. Thank you, Your Honor. Okay, very good. Thank you so much. Sorry for that confusion. It's quite all right. And for the appellees? Michael Scottie here on behalf of the athlete, Dr. James McDonald. Okay. All right. And how much time? I'm sorry. Are there one or two counsels? Just one. Just one. Just one. Okay, thank you. Thank you so much. Okay. My understanding is I just do my full 20 in the middle. Okay. Perfect. All right. Attorney Boder, you may begin. Thank you, Your Honor, and may it please the court. My name is Jeremy Boder, and I represent two of the appellants, Attorney Sally Wagonmaker and the law firm Wagonmaker and Oberle. We are here as we seek to protect the attorney-client privilege held by Wagonmaker's client, a church called Harvest Bible Chapel. The church is not a party to this lawsuit and is not a party to this appeal. We are asking this court to reverse the trial court's orders, requiring an in-camera review, and then compelling the production of communications between Wagonmaker and her firm on the one hand and the church on the other hand. And we are also asking this court to vacate an order of civil contempt and accompanying penalty assessed upon Wagonmaker following those orders. This is an interlocutory appeal from a discovery ruling. That ruling and this appeal involve the application of the crime-fraud exception to the attorney-client privilege. Let me ask, what do you think is the first question we must answer in ruling on these appeals? What's the initial issue in your view? Yes, go ahead. I apologize, Your Honor. The fundamental question in this appeal is whether, and if so to what extent, a claim for defamation, acts constituting alleged defamation, could even potentially give rise to the crime-fraud exception, which as we've articulated in our briefs, traditionally is applied only to criminal conduct or fraudulent conduct. Yet in this case, the trial court ruled at the very outset of this procedure that the crime-fraud exception may apply to intentional torts, such as defamation. As I will discuss throughout my argument today, and as we've addressed in our briefs, there are a number of issues with the court's ruling, but the fundamental question. But using that fundamental question, then there has been some development in the law since the 1990s, which is one of the seminal Supreme Court cases in Illinois, on which you rely. Not necessarily in Illinois specifically, but around the country, where courts have stated intentional conduct, and they've used the phrase akin to a fraud, or the level of a fraud, right? Those are two terms that are in the briefs and in the cases. Is there a difference between those two? And if there is, what is it? If there isn't, how does that relate to your argument? I don't believe there's a difference generally. Of course, there are going to be unique situations that the courts have dealt with in different jurisdictions. But I think generally, the expansion in some jurisdictions from simply crimes and fraudulent conduct to something a little bit broader, I think encompasses what is akin to fraud, what is reaching the level of fraud, but is not a fraud claim per se. I think that those two standards are essentially the same throughout the country. Okay, so saying that, and there are cases that have found certain circumstances to be, let's use the akin to phrase, to fraud. So, and your position is that this is not? Our position is twofold. Number one, we don't believe that the crime fraud exception should be expanded so far as to include conduct that is akin to fraud. But I think more importantly, our position is the conduct that was alleged here and certainly the conduct that was found here, both in ordering the in-camera review and then after having reviewed the documents and having compelled their production, does not rise anywhere close to conduct that is even akin to fraud.  it would rise to the level of fraud. Well, they're brief in their response over and over again, that there's all this substantial evidence with regard to intentional fraud and findings by the court. And I know you say there are no findings by the court. How can it be? One side says there are, the other side says there aren't. How do you think we should, well, I know how you think we should rule, but how do you explain that? The explanation is this, Your Honor. From the very beginning, the plaintiff founded their position upon their own allegations rather than upon any evidentiary underpinning. Now, this isn't to say that they didn't produce any documents that might support some aspect of their assertion, but what they do not produce any evidence, and this is prior to the in-camera review and then ultimately prior to the court's ultimate order compelling production, they don't produce any evidence indicating or certainly tending to indicate that there was an intent to make a false, knowingly false statement with the intent to injure. And I think that even if we look at the case law from outside of Illinois, where they have reached the standard akin to fraud or the level of fraud, it would require, number one, intentional conduct. Not only the intentional conduct of making a statement, making a representation, but intending and knowing that that statement is false. So that's number one. And number two, that in doing so, they're intending to injure another. There is no evidence. There are allegations, but there is no evidence that was presented to the trial court on either of those points. Yes, Your Honor. Wouldn't it be proper for the trial court to then conduct the in-camera for the purpose of making those determinations or findings? Absolutely. One of our arguments here is that the court made an error from the very first step. And in that first step, in ordering the in-camera review, the court applied the wrong standard. That's not to say that the court couldn't apply the right standard. And that standard is that it must be presented first with some evidence that there was an intent, an intent to make a knowingly false statement or publication, number one, and an intent to injure. And I think that the trial court should be put in the position where it can reassess whether an in-camera review was indeed warranted in the first place. And then if so, under that standard, the court may conduct, and it may be appropriate to conduct an in-camera review. And if so, the court should apply that standard. The problem that we have here is the court began under the misapprehension that it did not have, that the plaintiff did not have any burden to establish that there was an intent to make a knowingly false statement or that there was an intent to injure. So the court throughout the process never made any ruling on those points other than, as we've articulated in our briefs, when we inquired of the trial court after making its ultimate ruling and then after further explaining that ruling, we inquired of the trial court whether the trial court was reaching a conclusion by any modicum of the evidence that a false statement was made. So Mr. Bowdoin, let me ask you, I don't know how this works in the real world because I've sat in a trial court for 20 years and I've had many of these issues come up and it's sort of like putting the cart before the horse or the chicken and egg problem, right? I mean, the law doesn't require somebody to prove their case in order to establish that the crime fraud exception applies. And so how are courts to make these determinations in the real world, right? You look at the allegations of the complaint, you look at what else the proponent of the privilege and the other side exception is putting forth and I think I may have read this in a brief, is there some smoke here, right? I mean, that's the way it works in the real world, right? I don't think so, Your Honor. I don't think it needs to work that way. I think that it worked that way here. I think that what we, and in this case, the trial court need to do is we need to remember how important the attorney-client privilege is and to also recall that the burden is upon the party seeking disclosure. What's the harm in an in-camera review? There's minimal harm in an in-camera review. Other than overly burdening the court. I've done many of these myself. I mean, I can tell you about the harm, but there's really no harm to the parties or the proponents of the privilege. There can be harm. And I don't know whether there will be harm in this case. There certainly can be. In this case, unlike in some other cases, unlike as is suggested, I think it's in the United States versus Zola and in marriage of Decker. In this case, the trial court presiding over this case conducted the in-camera review himself. I don't think the law requires that that not be the case, but the law suggests that that might not be appropriate. And the reason for that is the trial court has already seen the documents that we have asserted to be privileged. So the trial court already has... We ask jurors to disregard evidence all the time, right? And certainly judges understand what's proper evidence and what's not and what they can consider and what's not. I mean, if that was the case, then every in-camera review would have to be conducted by another judge. And I don't think that that should be the case, but I do think... Let me ask you another question. There's a common element here between fraud and defamation, which is a false statement of material fact, correct? Yes. And so in that respect, aren't the claims akin... Isn't a defamation akin to fraud? No. I think not under... I think we could... In common parlance, we may say that defamation is akin to fraud. But as those two legal claims are defined,  nor do I think that they are akin in the sense that courts in certain jurisdictions around the country have used that term akin to fraud. The courts that... And we've articulated this in our brief. The courts haven't looked simply for a false statement in determining whether even in those jurisdictions, the exception might apply. Rather, they've looked at those elements that I've highlighted here, which are knowingly making a false statement, intending to make the false statement, and intending to injure. And I think that if you look around the country, courts have focused on those elements. And in fact, some of those courts have declined to apply the exception based on that very distinction that I've made here. So the answer is yes, in many ways, the two sorts of claims are akin to one another, but they're not akin insofar as courts have decided to expand the exception in certain arenas. Thank you very much. You're running out of time, but I have a question to follow up on what Justice Taylor asked. And the way that I understand the process under Illinois Supreme Court case law is that before the in-camera examination, if the privilege is to be overridden, there has to be a prima facie showing. And the burden is on the party that wants the privilege exempted to first show the judge and the judge have a hearing and findings. And then that burden switches to the other side, and then the judge makes the determination. And then once that is done, then there's a decision whether to do it. Otherwise, this could happen in every case. And that's why the law, in DeHart versus DeHart, which is a Supreme Court of Illinois case, it said that once a party makes a prima facie case that the privilege does not apply, the proponent of the privilege has to rebut the prima facie. If the proponent fails to do so, then the party making the prima facie case that a privilege does not apply is entitled to the discovery. And a judge can then look at it and see what's going on. It should be, you say, well, the privilege doesn't apply. I think that's what I'm trying to find out what that process, and I think that was what Justice Taylor is getting at as well. Right. And I will say that the process itself is not uniform, nor should it be uniform under the law. Why should it be uniform? It need not be uniform because it's not the case that in every situation an in-camera review is necessary or is warranted. It may well be. But that's my issue. That's why you have a prima facie hearing. You know, that's why you have to have, you have to have a basis to do the hearing. You just can't ask for the hearing because the privilege is, it's one of the most basic privileges in the law. It's absolutely the case, and the burden remains on the plaintiff at each step of this process. If the in-camera review is necessary, is warranted, the plaintiff has the burden of presenting some evidence, that's the term that we've seen, a factual basis, that's the term that's used in Decker, that to support a good faith belief by a reasonable person, that an in-camera review is warranted. In other words, at that stage, the plaintiff has the burden of showing that there is some basis in the evidentiary record, at least under our formulation, that there is an, in either a crime, a tort, or even in an expanded view, some basis to believe that there was an intentional act intending to make a false statement with the intent to injure. So there has to be some evidence, at least at the first stage, in order to even get to a, an in-camera review. Again. Mr. Boulder, you will have three minutes rebuttal. Attorney Todd. Thank you, Your Honor. Okay. Good afternoon, and may it please the court. As I mentioned, I'm Kevin Todd, and I represent Hogan, Gardner, and Talbot, which is a law firm here in Chicago that is a respondent to a subpoena that's issued in this case. The reason that we received a subpoena is because we represented Harvest Bible Chapel in an arbitration with James McDonald prior to the initiation of this lawsuit. And we're here to, as Mr. Boulder indicated, protect the attorney-client privilege held by Harvest Bible Chapel. Now, one thing that is worth noting is Judge Ezrig indicated in his ruling that this was initially on the wagon maker and overly ruling that this was a difficult issue, and he invited the parties to take an appeal, recognizing both the, I think, ground-cutting nature of his ruling as well as the magnitude and the significance, and as Justice Hyman just mentioned, the fundamental nature of the attorney-client privilege. And that is not something that is to be lightly undermined or eroded. And in this case, there's good reason, or in the context of the type of facts that we have here, there's good reason why courts in Illinois and courts elsewhere have not used or allowed a defamation allegation or the type of claims that are involved in this case to be a basis for invoking or applying the client fraud exception to that very basic and vital problem. But how about on the question of process, which is important in these circumstances, did the judge here make a prima facie finding that the privilege could be exempted before seeing the documents? Was there any kind of hearing? There was only oral argument, Your Honor. Was there evidence taken? There was no evidence taken, and one of the- But they argue that there were documents attached to their pleadings. That's true. I mean, documents were submitted attached to pleadings. There was no evidentiary hearing with respect to those documents. It was a Zoom court hearing, just like so many that we've got accustomed to over the last few years. Now, one aspect of that ruling, and this is quoting Judge Ezrig, and this is where he was beginning to explain very much in response to what you're getting at, Justice Hyman. He says, I'll tell you that my inclination is separate and apart from the crime fraud exception to the extent that HBC, which is the church, publishes a letter, criticizes the plaintiff, whether rightly or wrongly, whether justifiably or unjustifiably, and that letter is based upon an attorney's review and communications provided to the client, to the attorney by the client. I believe there's, more likely than not, there's going to be a waiver with respect to those communications. So my concern there is that the entire analysis from the front end was, I think, misguided as far as the perspective through which Judge Ezrig was looking at the materials and the situation in front of him. I have sought to understand how it could be the case that's separate and apart from the crime fraud exception that these documents could be, that there could be a waiver with respect to these documents. You're saying he didn't make any findings of that sort. He just came to the conclusion without making findings. He explained his ruling. I've seen the ruling. Independent from the rulings, the rulings reflect any and all findings that would have been had. They talk about the motions to compel and they say that that too supports the in-camera inspection. I mean, those were separate motions and with respect to those motions, there was no evidentiary hearing either. They were motion hearings. Have I answered that, Justice? Okay, thank you. I also just want to highlight one of the concerns here is that if this rule were adopted, for one, it would invite, I think, a whole lot more appeals like the one in front of you right now. But then also here, I mean, under Decker, the court made clear, our Supreme Court made clear that the exception only applies where the client, where a client when consulting with attorney knew or should have known that the intended conduct was unlawful. And as Mr. Boter indicated, there has not been such a finding here. And what is presented in court here is a situation where there was good faith consultation by a client with its attorneys, with the client seeking to avoid anything that could be actionable. And the attorneys interacted with the client with respect to that, with respect to that, gave input, gave advice, and then there was this publication that occurred. And that then is a basis for waiver of the attorney-client privilege. That would so dramatically undermine any ability for an attorney to guide or give guidance to a client. And I made the hypothetical in our reply brief about the Tribune article where, and I mean, I'm sure the panel's read it, but it's the situation very similar to the one we have here, similar, I think, to what the Texas court faced in Bass, where if you've got, I mean, in the Tribune situation, you've got a newspaper that wants to, that has an article, it's been sourced, it's been resourced, all of that. It doesn't want, of course, to be sued for defamation. And so it calls its attorneys, the attorneys give some input on how you can minimize or avoid potential defamation here, recognizing that the potential plaintiff in that scenario is somebody who's inclined to litigate, inclined to bring a claim, has the ability, has the resources. The Tribune publishes the article. The individual who they were concerned about brings a lawsuit claiming defamation. And under the trial court's analysis here, all those communications leading up to the publication would be subject to discovery, discovery by the litigation opponent. And that just seems like a very drastic and unfounded result, and one that would so fundamentally undermine the ability. I mean, it's a good thing that lawyers consult, or that clients consult with their lawyers. It's good for potential plaintiffs. It's good for society. It's good for entities. And that's what we have here. And if that's going to be something that can result in the waiver of attorney-client privilege, that's a very precarious situation. And it's one that I think Judge Ezra rightly recognized the magnitude of, and therefore invited this appeal. And it's one that we're asking the court to reverse those rulings because they're unsupported by Illinois law as it stands. In fact, it's unsupported by law developed in other jurisdictions as well. So that's what we'd ask the court to do here. Thank you. Any additional questions from the panel? Okay, thank you very much. Appellee. Thank you, Your Honor. May it please the court. My name is Michael Scotti. I represent Dr. James McDonald, the appellee. This is a case where the defendants, the appellants, and their attorneys worked in concert to publish false and defamatory statements against Dr. McDonald. The attorney-client privilege is an exception to the Illinois discovery rules. It's an important exception. Let's go to the issue of what happened here. We've read your briefs and the record has lots of materials. But even in your briefs, you continually cite cases. And I'll read one of them that you cite, which says that it is clear that for the fraud portion of the crime fraud exception to apply, there must be at least a prima facie showing that a misrepresentation or concealment was ongoing or about to be committed when a document in question was prepared. And I don't see that having been done here. Where are the findings? Where was the hearing of it included evidence? Other than you keep arguing about what you cite throughout here, your allegations. That doesn't help. And you cite motions to compel. That doesn't help. So where were the findings? Well, Your Honor, we had four motions to compel that were all heard together by Judge Essrig. Attached to those motions to compel were numerous documents. We're not talking about the motions that compel. I mean, that's your response in your brief. I just said that. The question is, and you cited several times, you have cases all over the country. And this is what I was asking your opponents, is that my understanding of the process is it just isn't, you raise this issue and you go to an in-camera inspection. The issue, because of the importance, is to first have a prima facie determination. And that's exactly what the case I just read said. And several other cases say the same thing. So if that's the law in Illinois, which I believe it is, where was the prima facie hearing and finding? During the hearing on the motion to compel, the multiple motions to compel, Judge Essrig made a finding that the Zolan test was met and that a prudent person would have a reasonable basis to suspect the perpetration or attempted perpetration of intentional misconduct akin to fraud. That's almost verbatim out of Judge Essrig's ruling. And he relied on the case out of Ohio, the Safety Day case as an example. There were numerous pieces of evidence that were cited to, and I say evidence because these were documents that were produced in the case that were before him that show specifically that the Harvest Bible Chapel, whose communications these were, had specifically threatened to disqualify Mr. McDonald if he didn't settle the case. That they're, at the very beginning, they said that they're gonna find financial mismanagement before they ever reviewed the case. These are predetermined outcomes of their purported independent investigation, and they hired a lawyer that was purportedly independent, yet she was paid, Mrs. Wagenbaker was paid by the insurance company that was defending the arbitration matter. And so she had a duty to zealously defend Harvest, and they pawned her off as an independent counsel. Now, these are the facts that Judge Essrig reviewed and commented about. Also, the elder board instructed Wagenbaker and SDK to beef up the allegations of financial misconduct. They also told them to strike from their letters that anybody else was responsible except for James McDonald. These were all documents that were reliable, that were considered at the hearing where Judge Essrig found that the Zolan test was met. Also, you know, SDK, the accountants, sent an email acknowledging that their findings were somewhat unreliable because they had limited access to anybody who had contemporary knowledge of the facts that they were evaluating. The lawyers, we have an email even from Kevin Todd that was produced that shows that he told them flat out... Nothing you've said is anything you have to do with fraud. I disagree, Your Honor. I disagree. So lies and deceit are the things that fraud is made of. Those are akin to fraud. They lied about James McDonald. It's very rare that defamation cases come within the crime fraud. They just don't. The number of cases is negligible around the country, as you know. It's never been done in Illinois. This is taking it to a new step, as you know, and that's one of the reasons it's before us because it is a question that hasn't been raised before and not very often. And you even have to dig deep into federal court cases around the country, you know, federal, mostly district court cases, not even the appellate court cases, to find something that you can rely on. So why should we even go there when this would just open a hornet's nest? Well, Your Honor, you should go there because lying, intentionally lying, and intentionally deceitful conduct is what the evidence we put before judges... No, no, defamation per se is what you said. And I know, you know, actual malice and so forth. So are you saying that any time there's something, a plot that has malice, that that opens up the attorney-client problem? No, absolutely not, absolutely not. How are we going to... What is it? This is a case-by-case situation. All the cases say that, and so you have to look at the facts. And first you have to have an argument and ruling that there is a reasonable basis to suspect that an in-camera review would be done. Now, most of the cases that are in front of you, the appellants appealed at that stage. They said, we don't even want to produce our communications to the judge for the in-camera inspection. Here, the appellants voluntarily produced their documents, and now the horse is already out of the barn. Judge Essrig looked at their communications, about 5,000 of them, and took select documents out of that group and said, these documents must be turned over because they are akin to fraud, they are deception, lies, and must be turned over. So we feel like this case is clearly akin to fraud. Not every defamation case is, but this one is where the board minutes and such specifically say that they were motivated to defame Mr. McDonald so that they could explain to their congregation why they terminated a very popular... What do you base that on? Isn't that based on your allegations? No, that's based on the elder board minutes that were produced and submitted to Judge Essrig that he reviewed, read, and cited in his ruling as the basis for this case meeting the Zolan test. And even if there wasn't a specific hearing, you know, like you're saying, where there was evidence prevented, it's a minimal error. As the other side just admitted in their argument, there is... What's the harm of an in-camera inspection? Minimal harm. Because, you know, Judge Essrig could have looked at these and said, hey, you know, I got it all wrong. There's not evidence here as an exception to the crime fraud. There's no reason to find these are akin to fraud. But he looked at them and he said there was. And that decision, it should be judged on an abusive discretion level because he's in a better position than this court to make that decision. I didn't see any case in your brief that said it should be an abusive discretion.  say de novo. Well, I disagree, Your Honor. There's a Supreme Court case that we cited, which was the Radejick case from 2013. And that was a decision where they noted in here that it was a de novo review. Now, it didn't rule that there was abusive discretion, but it said here there's a de novo review because we're not in a position superior to the trial court because there was no live testimony put on for us to judge. Here, Judge Essrig is in a superior position to you. How can you judge whether Essrig's review of the in-camera documents was accurate when you don't have those documents in front of you? That's not the issue before us. We're not reviewing a fact. They're not even before us, as you say. We don't know what those documents are, and we don't need to in order to answer the question. Are you saying we don't have anything to decide here? Is that your idea? No, I'm saying you have to decide. You have to affirm the exact two rulings. We don't have to affirm. We have to decide. You're correct. You have to decide. Correct. There's two issues in front of you. Primarily, is was the decision to go and do an in-camera review appropriate? And assuming so, was it appropriate for Judge Essrig to, based on his review, order the turnover of the documents? And those are de novo. Aren't those de novo questions? That's my question. No. The first one is. The second one is not. Well, we can't decide the second one. We don't have those documents. And if we decide the first one on de novo, it may vitiate even deciding the second one. I guess you would say that. I would urge you not to make that finding, because even if there is an error on the in-camera inspection, that's harmless error, because once they got to the in-camera inspection, they actually saw the documents. He saw the evidence akin to fraud. Judge Essrig is one of the brightest, most intelligent, thoughtful judges in the Chancery Court, in my opinion. He looked at these. He was very deliberate in his rulings. He set out specifically in his rulings why he thought those documents should be turned over, because they were akin to fraud and that the exception in Illinois should be recognized by the court. There is no case on point in Illinois, but there's no case that says you can't expand it either. And it would be my request that this court find that the attorney-client exception for crime fraud be extended to intentional courts, such as we have here on a case-by-case basis, where there is evidence of intentional lying and reckless misconduct, which could be a crime if it was pled as fraud. You don't have to have a fraud claim. You don't have to have a fraud claim to have conduct similar to fraud. Mr. Scottie, the documents that were reviewed in-camera, those documents are not part of this record. That's correct. The appellants did not file a motion to supplement the record to provide the justices with their own view of those documents, which they could have. They chose not to. And they shouldn't be advantaged by that. Is there any reason why you, as the appellee, did not seek to supplement the record to have those documents put before us so we could review them? Yes, Your Honor. I don't have the documents. I've never had them. I've never seen them, because Judge Estrick ordered them to turn over, and they refused. No, but couldn't you have asked the trial judge to order the appellants to include those records, albeit under seal, in the record in this case so that we can have the opportunity to do the same thing that Judge Estrick did? You know, the appellants have the burden here. You know, and I know it's a de novo review, but it would have been in their documents. I felt it was their responsibility, and if they chose not to do it, then I wasn't going to build a better record. I wasn't going to take that extra step. I thought that this court had plenty of evidence and support for Judge Estrick's ruling to find that this is not an undue extension of the crime fraud exception. Counsel, before you wrap up, you do have about five or six minutes left. Can you point to the record? Let me know where I would find the specific findings regarding the prima facie case. Go ahead. I believe I can. On the March 11th hearing, the court found that plaintiffs made a prima facie showing that the crime fraud exception, and that should be on the transcript pages. I believe it's six through nine, and I wish I had the appellate court record, but I can direct you to our brief. Page 32 of our brief cites a list of pieces of evidence that led Estrick to that decision and the basis of that evidence. But the abusive discretion standard, I believe, should apply to the in-camera ruling because it makes common sense, and it's consistent with the Supreme Court case of Rejovic in 2013, that if the trial court is in a superior position than the appellate court, due deference and respect should be given to that decision. So we must give deference. I would request that this court give deference to Judge Estrick's decision for taking the time to review approximately 5,000 documents and to each one decide this one should be produced and this one should not be produced as being waived by the, by excluded from the attorney-client privilege based on the crime-fraud exception. He's a better position to make that call than this court, and to the extent that this court finds that Judge Estrick's rulings and findings that allowed him to order the documents to be turned over for the in-camera inspection were not sufficient, I would ask for that, that decision to be given latitude because then he actually did the actual inspection and found the evidence with his own eyes. And, you know, as was cited in the appellant's arguments, he didn't take that decision lightly. He did it after review of the law. It takes a lot for a judge to pave new ground, essentially, to expand the longstanding privilege like the attorney-client privilege. So you raised an argument of waiver and the judge ruled against you, and you have not appealed that issue. Well, I believe in the back of our, at the last part of our brief, we pointed out to the court that they can review the entire motion to compel these documents, and we had, I believe, three other arguments. And I believe that subject matter waiver was one of those arguments that we asked to be preserved and raised at the back of our brief. It certainly wasn't, we didn't leave off of that, but I believe it is there. And because the lawyer for the church wrote a letter and the client made a determination to publish it online for the whole world to see, we argued that they waived their right to the legal advice given in that letter. And Judge Estrig did not grant our motion on that basis, but he did grant it on this basis. And so I would state that this court has the ability to look at our motion to compel and affirm it, since that is a de novo review, affirm it on any of the other basis we had in there, which includes a waiver of the attorney-client privilege based on publication. Did Judge Estrig specifically reject your argument or simply not address it because it was moot? I believe he specifically rejected it, Your Honor. Okay. And I believe that's what his ruling was. Well, I have the transcript in front of me and I believe he says, I don't think I have to determine right now whether or not the privilege has been waived with respect to those communications because based on my ruling with regard to the crime fraud exception, I'm going to be examining those documents in camera anyway, and I will wait to see about that. Justice Johnson, I thank you for correcting me on that point. I guess he did not rule against me, but he deemed it moot to answer your question, Justice Taylor. So with that, we would like you to affirm the ruling of Judge Estrig ordering the attorney-client communications he identified to be turned over in production. Thank you. Counsel, I know you directed me to the March 11th transcript regarding his findings regarding prima facie case. Can you give me a, I know you said six through nine, but I don't see it. Do you have it tabbed by chance or? Your Honor, unfortunately I don't have a tab. I apologize. If I can find the reference to the appendix, I'll provide it maybe at the end of the rebuttal argument. Okay. That's permissible. Thank you very much. Okay. Rebuttal. You have three minutes. Attorney Bader. Muted. Thank you, Your Honor. I want to correct some misstatements. First of all, relative to the documents submitted to the court for in-camera review, board meeting minutes of Harvest Bible Chapel were mentioned. There is nothing in the board meeting minutes in which they state that they intended to defame, that they intended to make any false statements. Rather, those board meeting minutes only support that they had an interest in number one, avoiding a defamation claim by Mr. McDonald against whom they were currently involved in litigation that Mr. Todd and his firm were representing the church in, and that they felt that they had a responsibility to accurately report to their congregation what had led to Mr. McDonald's termination. There is nothing there that says that they intended to defame. That's simply not accurate. You also heard in Appley's argument that the trial court found that the documents submitted for in-camera review revealed false statements that were akin to fraud. That is nowhere in either of the two oral rulings made by the trial court on the motion to compel that follow the in-camera review. In fact, I inquired of the trial court whether a determination by some modicum of evidence was being made as to defamation, and the trial court demurred. I asked further whether there was evidence of intentional conduct, and the trial court answered essentially no. The trial court answered that rather than intentional conduct, the trial court said that there was evidence that the church knew or should have known that some of the statements that it was considering making would likely be considered defamation. So the court qualified its conclusion, likely defamation, not defamation, not false, but likely false, and said that not only did they know, but that they should have known. These are exactly the circumstances under which a client should go to a lawyer where they believe or suspect or are concerned that something that they're doing may run afoul of the law. This is why we want clients to go to lawyers. And that is the finding that the court made here. Satisfied the crime-fraud exception. It did not. Standard of review issue was raised as well. The case Ratojcik, cited by Appelese in their brief and mentioned here today, Ratojcik dealt with a relevance objection that went up on appeal. The court explicitly noted that had it been an attorney-client privilege objection, the review would have been conducted de novo. It was conducted under an abuse of discretion standard only because it dealt with relevance, which is an issue that is within the court's discretion. An issue of attorney-client privilege is entirely a de novo review. And I want to point one final thing out on that point. We're not challenging the findings that were made by the trial court after the review of the in-camera documents. Rather, as we've noted, in the hearings, or excuse me, the rulings of August 31st and October 12th of 2022, the findings that the trial court made do not bring this case within the bounds of the crime-fraud exception. So we even accepting those findings, we disagree with them, but accepting them for the purposes of this appeal, they are not finding sufficient to invoke the crime-fraud exception to the attorney-client privilege. One last point. Justice Johnson, you had asked for the location within the record upon which the court made its factual ruling to the extent that there was one as to the Prima Fascia case in ordering the in-camera review. It is on pages R, eight of the report of proceedings, through about page 12. Very little of that are factual findings, though. The trial court initially stated, as to the crime-fraud exception, the court finds that the exception may extend to potential torts that involve deliberate misrepresentations, including defamation. The court then spent a few pages of the transcript explaining why the court believed that an expansion to defamation would be appropriate. The court's only findings or expressed findings as to meet that threshold purportedly are this statement, and I can read it. It's rather short. Here he says, we have sufficient evidence to meet the standard. We have evidence that the Wagonmaker and Oberle attorneys essentially drafted the lead defamatory letter, and later on, he clarified that he did not conclude that there was defamation, only that it's an alleged defamatory letter. And he went on, and that the Huggendorn and Talbott attorney made revisions or suggestions to that letter before publication, excuse me, prior to publication. We also have evidence that the client sought advice from Huggendorn and Talbott attorneys as to whether to go forward with publications, and that the lawyers gave such advice. That paragraph contains the entirety of the factual findings that the court made in ordering an in-camera review, and those factual findings fall far short under any iteration of the crime-fraud exception of meeting that even low standard for ordering a in-camera review. In conclusion, we ask that this court… You think it's a low standard for meeting in-camera review of attorney-client material? Is that your position? It's a relatively low standard. I may not have put it very well, Justice Hyman. It's a lower standard than, number one, the standard that would be required to compel the actual order, the actual production following in-camera review, and it certainly is a lower standard than would be required to prevail at a trial on the case. So it's a lower standard. I don't believe that it's a low standard. It is a high standard because it's one that requires the production of what are ostensibly attorney-client privilege communications. And on the point raised by Appelee's counsel that, well, there isn't any great prejudice here, sure there can be, and in this case there is, because those communications have been produced to the trial judge. This is the judge who's presiding over the rest of the case and would be presiding over trial. So there certainly is the potential for significant prejudice. Final statement, Attorney Boulder. Thank you. In conclusion, the trial court followed a flawed process and reached a flawed result. And if the trial court's process and result were consistent with the law of this state, there would be a slippery slope. It would require only an allegation that a client went to a lawyer with concern that a statement that they intended to make or were considering making might be considered fraudulent, defamatory, or false, and the lawyer gave advice. And under those circumstances, as Mr. Todd indicated earlier, there would be no attorney-client privilege. That is not and should not be the law of this state. It is not the law of any other state either. We kindly ask this court to reverse the orders of the trial court, ordering an in-camera review, compelling production, and finally assessing a penalty against our client in connection with a finding of civil contempt. Thank you for your time and consideration. Thank you. Attorney Todd, two-minute rebuttal. You're muted. Sorry about that. I will be brief here. Just a few points. First of all, Judge Ezra indicated that nothing in Decker precluded his ruling. Precluding and supporting are worlds apart from each other. And here, there was nothing to support his ruling, and therefore it was improper and should be reversed. Sometimes I say things that maybe are obvious to me because that's helpful. Any expansion of the crime fraud exception is a shrinking of the attorney-client privilege, which is a dangerous proposition and should be guarded against jealously. The record waiver language, Justice Johnson, that you pointed to where you're asking about the waiver with respect to Wagonmaker and the tail end of Mr. Scottie's argument, I believe that that's found in roughly, and I was doing this while we were in the session, so there might be additional pages, but I believe that's approximately found at pages C395, this is volume two, C3957 and following, where Judge Ezra, I believe, did specifically address the waiver argument that is at the end of Appley's brief and specifically rejected that, which was the case likewise in the arbitration proceeding. So that position has been wrongly, soundly, repeatedly rejected. The only points I wanted to address in rebuttal, as indicated earlier, we believe the judge's rulings were improper, not supported by the law, and so we'd ask the court to reverse each of the rulings as indicated in our brief. Thank you very much. Attorney Scottie, you were looking for some language in the transcript. Were you able to locate it? Now I'm asking if you can just point me to where the language is. Correct. C2764 through 2834. I know that's about 40, 50 pages, but that's... Okay, 2834. Yes, ma'am. Okay. All right. Thank you so much. Thank you for your time today. Yes. You have each done an excellent job representing your clients and their interests. I thank you for your time today. We will certainly take all the arguments under consideration and issue a ruling henceforth. Thank you very much, everyone. Be well. Thank you very much. Thank you.